UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,        No. 17-CR-20687

-vs-

                            Hon. Bernard A. Friedman

D-1    LOUELLA BREWSTER,

        Defendant.
_____/

**GOVERNMENT'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS INDICTMENT**

The United States of America hereby responds to defendant Louella Brewster's motion to dismiss the indictment in this case, and states:

1. On December 3, 2013, a federal criminal complaint was issued in this district charging defendant Louella Brewster with the unlawful conversion of her deceased mother's Social Security benefits from May 1984 to July 2013, in violation of 18 U.S.C. § 641. (ECF No. 1, No. 13-MJ-30762.) The amount converted was approximately $246,000. A warrant for defendant's arrest was issued on the same day. (ECF No. 2, No. 13-MJ-30762.)

2. Two months earlier, in September 2013, in anticipation of the filing of criminal charges, special agents of the Office of Inspector General of the Social Security Administration began their efforts to locate defendant. They monitored defendant's last known residence in Detroit and interviewed two of her siblings.

3. After the criminal complaint was filed, agents continued their active search for defendant. In a report dated July 16, 2014, the case agent wrote, "We have attempted to locate Brewster for approximately eight (8) months and do not know her whereabouts. Brewster's arrest warrant is entered into NCIC. This case will be closed pending her arrest."[1]

4. On October 17, 2017, a federal grand jury in this district returned an Indictment charging defendant with the offense alleged in the criminal complaint, the unlawful conversion of her deceased mother's Social Security benefits from May 1984 to July 2013. (ECF No. 1, No. 17-CR-20687.) A warrant for defendant's arrest based on the Indictment was issued on the same day. (ECF No. 2, No. 17-CR-20687.)

5. Following the indictment's return, agents spent another 10 months searching for defendant, from December 2017 to September 2018, without success.

---

[1] The eight-month period referred to in the agent's report began in December 2013, when the criminal complaint was filed, and ended in July 2014, when the report was written. But, as noted above, the preindictment effort to locate defendant actually began in September 2013, and so the active preindictment search for defendant in connection with this prosecution lasted for 10 months.

6. In December 2020, agents received a tip from the Michigan Department of Health and Human Services about defendant's new address. This led to defendant's arrest on January 13, 2021. Later that day defendant made her initial appearance on the Indictment. The duty magistrate judge appointed the Federal Community Defender to represent defendant (ECF No. 6, No. 17-CR-20687) and then released her on a $10,000 unsecured bond. (ECF Nos. 8, 9, No. 17-CR-20687.) A week later, on January 20, defendant was arraigned by the duty magistrate judge, and a not guilty plea was entered.

7. On February 14, 2022, defendant filed a motion to dismiss the indictment, which is based on her claim that there has been improper delay during her prosecution.

8. For the reasons explained in the accompanying brief, there was no impermissible delay in filing the charges in this case and thus no violation of the statute of limitations. Nor has there been any violation of defendant's right to a speedy trial under the Sixth Amendment or Rule 48(b) of the Federal Rules of Criminal Procedure.

WHEREFORE, the government requests this Court to deny defendant's

motion to dismiss the indictment.

                                                      Respectfully submitted,

                                                      DAWN N. ISON
                                                      *United States Attorney*

                                                      s/Stephen L. Hiyama
                                                     STEPHEN L. HIYAMA
                                                     Assistant United States Attorney
                                                     211 West Fort Street, Suite 2001
                                                     Detroit, Michigan  48226
                                                     phone  313-226-9674
                                                     e-mail stephen.hiyama@usdoj.gov

Date:  February 23, 2022                  bar no. P32236

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                No. 17-CR-20687

-vs-

                                  Hon. Bernard A. Friedman

D-1   LOUELLA BREWSTER,

        Defendant.
_____/

**BRIEF IN SUPPORT OF GOVERNMENT'S RESPONSE
TO DEFENDANT'S MOTION TO DISMISS INDICTMENT**

### I. STATUTE OF LIMITATIONS

The one-count Indictment in this case alleges that defendant Louella Brewster "did steal, embezzle, and knowingly convert to her own use or the use of others" her mother's Social Security benefits "[f]rom approximately May 1984 to approximately July 2013." (ECF No. 1, PageID.1.) The general federal criminal statute of limitations states that an "indictment [must be] found . . . within five years next after such offense shall have been committed." 18 U.S.C. § 3282(a).

The Indictment in this case was returned and filed on October 17, 2017, within five years of the completion of defendant's course of criminal conduct in July 2013. Nevertheless, defendant asserts that the Indictment was untimely

because it was improperly sealed when it was returned and remained sealed until she was arrested in January 2021, after the five-year limitations period had expired. She relies on the principle that if an indictment is sealed for an *improper* purpose, it is not "found" for purposes of the statute of limitations until the indictment is unsealed. *See, e.g.*, *United States v. Wright*, 343 F.3d 849, 857 (6th Cir. 2003).

### A. The Indictment was Not Sealed

To begin with, the record does not reflect that the Indictment in this case was ever sealed. The PACER docket sheet shows only that on October 17, 2017, the Indictment was returned and a warrant for defendant's arrest was issued. (ECF Nos. 1 and 2.) The docket sheet does not reflect the filing of a motion to seal the Indictment or an order sealing the Indictment. The next entry on the docket sheet is for an event that occurred over three years later, on January 13, 2021, which was defendant's arrest. On that day the government filed a motion to unseal the Indictment, and the court issued an order unsealing the Indictment. (ECF No. 4.)

But the motion and order to unseal were completely unnecessary and superfluous because, as the docket sheet makes clear, the Indictment had never been placed under seal to begin with. That makes sense, for there was no good reason for the government to request that the Indictment be sealed. Shortly before the filing of the criminal complaint in December 2013 and over the several following months, special agents of the Office of Inspector General of the Social

Security Administration made contact with defendant's brother, two of her sisters, and a niece and asked them about defendant's whereabouts and their need to speak with her. *See* ATTACHMENT A, pp. 1-2 (filed under seal). On December 23, 2013, agents informed defendant's niece that an arrest warrant for defendant had been issued, and on January 28, 2014, they told one of defendant's sisters the same thing. *See* ATTACHMENT A, p. 2 (filed under seal). As a result of these contacts, it is probable if not certain that in 2013 or early 2014 defendant knew that she was the object of a federal criminal investigation and had been charged with a federal crime. Given that, sealing the Indictment when it was returned in October 2017 would not have served any useful purpose.[2]

Because defendant's Indictment was never under seal, any claim based on the assumption that it had been placed under seal is baseless.

### B. If the Indictment was Sealed, It Was Sealed for a Proper Purpose

Moreover, even if we assume for the sake of argument, and contrary to the record, that the Indictment was placed under seal when it was returned in October 2017, before the statute of limitations had expired, the sealing was entirely proper and, therefore, did not affect the operation of the statute of limitations. The Sixth Circuit has held "that a timely filed *and properly sealed* indictment tolls the statute

---

[2] Indeed, this may be why the government caused the criminal complaint in this case to be unsealed on December 12, 2013, nine days after it had been issued and sealed. (ECF No. 4, No. 13-MJ-30762.)

of limitations." *United States v. Wright*, 343 F.3d 849, 857 (6th Cir. 2003) (emphasis added). The most common reason to seal an indictment is to facilitate a defendant's arrest, and indeed, this is the only reason for sealing an indictment specifically referred to in the grand jury secrecy rule, Rule 6(e), which states in part, "(4) *Sealed Indictment.* The magistrate judge to whom an indictment is returned may direct that the indictment be kept secret until the defendant is in custody or has been released pending trial." FED. R. CRIM. P. 6(e)(4).[3]

If the Indictment was placed under seal, the reason for the sealing would have been facilitating defendant's arrest. Defendant makes much of the fact that "[t]here is nothing to reflect or indicate the basis for the request for sealing or the duration in which the indictment was to be sealed." (ECF No. 23: Motion to Dismiss and Brief, PageID.70.) That is true.[4] But it is also true that there is nothing in the record that indicates or even suggests that the reason it was sealed was

---

[3] There are, of course, other legitimate reasons for sealing indictments. *See, e.g.*, *United States v. Ramey*, 791 F.2d 317, 321 (4th Cir. 1986) ("[T]he judicial officer may grant the Government's motion to seal for any legitimate prosecutorial need and . . . is not confined simply to the need to take the defendant into custody."). In *Wright*, for example, the Sixth Circuit found that "the protection of [an informant] and the need to avoid compromising an ongoing investigation" were "permissible reasons for sealing an indictment." 343 F.3d at 858; *see also, e.g.*, *United States v. Bracy*, 67 F.3d 1421, 1426-27 (9th Cir. 1995) (sealing to protect potential witnesses and to give IRS, recently added to prosecution team, time to investigate financial crimes proper).

[4] Of course, the absence of such information is most indicative of the fact that the Indictment was not placed under seal.

improper. There is no reason to believe that the reason the Indictment was sealed was anything other than the usual reason, facilitating the defendant's arrest. Thus, the fact that the basis for the sealing is not stated in the record does not support defendant's bare assertion that the Indictment was sealed for an improper purpose. And, tellingly, defendant does not suggest what that improper purpose might have been.

Because the Indictment, if it was sealed, was sealed for a proper purpose, the sealing is irrelevant to the question whether the statute of limitations was violated. Thus, defendant's Indictment, returned in October 2017, within five years of the completion of defendant's course of criminal conduct in July 2013, was timely.

## II. SIXTH AMENDMENT RIGHT TO A SPEEDY TRIAL

The Speedy Trial Clause of the Sixth Amendment states, "In all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial . . . ." In *Barker v. Wingo*, 407 U.S. 514 (1972), the Supreme Court announced a four-part balancing test to determine whether a post-charge, pretrial delay violates the Speedy Trial Clause. That test assesses four factors: the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Id.* at 530. While defendant contends that her speedy trial right was violated, it is manifest that it was not, as explained below.

### A. Length of Delay

The first factor, the length of the delay, is the period from the filing of the Indictment to the present. *See*, e.g., *United States v. Bass*, 460 F.3d 830, 836 (6th Cir. 2006) ("The length of delay is measured from the earlier of the date of indictment or arrest to the defendant's trial."). Here, there are two periods of delay: the delay from the Indictment to defendant's arrest, and the delay from her arrest until now. The first delay was four years and four months long, and the second delay has lasted about 13 months, which adds up to a total of five years and five months. "'The first factor, length of the delay, is a triggering mechanism.' *United States v. Brown*, 498 F.3d 523, 530 (6th Cir. 2007). A one-year delay is presumptively prejudicial and triggers analysis of the remaining Barker factors." *United States v. Sutton*, 862 F.3d 547, 559 (6th Cir. 2017) (citing *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992)). Here, the delay exceeded one year, and so the Court must consider the three other *Barker* factors.

### B. Reason for the Delay

The second *Barker* factor involves an assessment of "whether the government or the criminal defendant is more to blame for th[e] delay." *Doggett v. United States*, 505 U.S. 647, 651 (1992).

> Governmental delays motivated by bad faith, harassment or attempts to seek a tactical advantage weigh heavily against the government. "A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless

- 6 -

should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." A "valid reason" for a delay, such as an unavailable witness, weighs in favor of the government.

*United States v. Schreane*, 331 F.3d 548, 553-54 (6th Cir. 2003) (citations omitted).

Defendant does not claim or even imply that the government has acted in bad faith. The record reflects that there was a perfectly valid reason for the delay between indictment and arrest: despite its best efforts, the government could not locate defendant. The Sixth Circuit addressed a similar situation in *United States v. DeClue*, 899 F.2d 1465 (6th Cir. 1990). There, "[f]rom the time of his indictment in 1982 until his arrest in 1988, DeClue was a fugitive." *Id.* at 1470.

> The IRS made attempts to locate appellant by sending Agent Bridges to two known addresses and by sending an agent to arrest him at an address listed in a civil tax claim filed by appellant. An agent also was sent to a hearing regarding the civil tax claim. Although the device of tracing appellant through his social security account could have been employed sooner, it was the actions of appellant that precipitated the necessity of using such a device.

*Id.* The *DeClue* court concluded that *"*any negligence on the part of the government in causing the length of the delay is outweighed by defendant's elusiveness, which initially precipitated the delay," *id.*, and it rejected the defendant's speedy trial claim. "In cases where the defendant is missing, 'the government is not required to exhaust all conceivable avenues' in finding him or her. The Sixth Amendment mandates only a 'diligent, good-faith effort' on behalf of the

- 7 -

government to find the defendant and bring him or her to trial." *United States v. Machado*, 886 F.3d 1070, 1080 (11th Cir. 2018).

Here, the government spent considerable resources in trying to locate and arrest defendant. This effort, summarized in ATTACHMENT A (filed under seal), was nothing if not an active, "diligent, good-faith effort," which began when the criminal complaint was issued in December 2013. Although the government was unable to locate and arrest defendant for a number of years, it was not for lack of substantial effort. *See* ATTACHMENT A (filed under seal). Plainly, it was defendant and defendant alone who caused the delay.

Likewise, the reasons for the second delay, the delay from defendant's arrest in January 2021 to the present, was not caused by any government bad faith or negligence. It was the product of ordinary post-indictment proceedings and adjournments to which defendant has consented. There have been three stipulations between the parties and three related orders for ends-of-justice continuances. These orders were filed on March 9, July 15, and November 9, 2021, and together provided for excludable delay from March 4, 2021, to January 18, 2022. (ECF Nos. 15, 16, 18.) Even now, defendant does not claim that any of these continuances was improper.

### C. Assertion of Speedy Trial Right

Defendant did not assert her right to a speedy trial until her motion to dismiss the indictment was filed on February 14, 2022, some 13 months after she was arrested and arraigned. "Where it is shown that the defendant was aware of the charges against him, then this factor weighs heavily against the defendant." *United States v. Robinson*, 455 F.3d 602, 608 (6th Cir. 2006). In *Robinson*, there was a 15-month gap between the time the defendant learned of the federal criminal complaint and the time he filed a motion to dismiss the indictment. *Id.* The Sixth Circuit determined that the "defendant's failure to timely assert his right to a trial upon learning of the federal charges weighs against his speedy trial claim." *Id.; see also, e.g., United States v. Schreane*, 331 F.3d 548, 557 (6th Cir. 2003) ("Schreane's four-month and three-week delay in invoking his speedy trial right weighs against him."); *United States v. Thomas*, 167 F.3d 299, 305 (6th Cir. 1999) (15-month delay in assertion of right; "defendant's failure to assert his rights in a timely fashion weighs heavily against his Sixth Amendment claim"). *See generally Barker v. Wingo*, 407 U.S. 514, 532 (1972) ("We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial.").

### D. Prejudice

In *Barker v. Wingo*, 407 U.S. 514 (1972), the Supreme Court explained:

- 9 -

> A fourth factor is prejudice to the defendant. Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past. Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown.

*Id.* at 532.

In her motion to dismiss, defendant does not identify any unfair prejudice resulting from the delay in this case. There is no claim of lost evidence, and as noted above, defendant has never been detained during the course of this prosecution.

### E.  No Sixth Amendment Violation

In setting out the criteria by which the Sixth Amendment right to a speedy trial must be judged, the *Barker* Court explained:

> We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process.

*Barker*, 407 U.S. at 533.

Here, for the reasons explained above, the *Barker* factors considered together weigh heavily against defendant: the government was not blameworthy in relation to the delay, defendant failed to timely assert her speedy trial rights, and the delay has not resulted in any prejudice to defendant. Defendant's Sixth Amendment right to a speedy trial has not been violated.

### III. RULE 48(b)

Rule 48(b) of the Federal Rules of Criminal Procedure states in part: "The Court may dismiss an indictment . . . if unnecessary delay occurs in: . . . (3) bringing a defendant to trial." Fed. R. Crim. P. 48(b). "By its terms Rule 48(b) is discretionary and, according to the Reporter's Notes, reflects the inherent power of courts to dismiss for want of prosecution." *United States v. Ciammitti*, 720 F.2d 927, 929 (6th Cir. 1983).

Rule 48(b) was promulgated in 1946 and deals with "unnecessary delay" during a prosecution. Thus, in the post-indictment context, it covers the same ground as the Sixth Amendment's Speedy Trial Clause and the 70-day indictment-to-trial rule of the Speedy Trial Act of 1974, 18 U.S.C. § 3161(c)(1). It is unclear, therefore, what if any independent role Rule 48(b) still has in the indictment-to-trial stage of a prosecution. In fact, it is fair to infer that it has no independent role at all. *See United States v. LaBorde*, 496 F.2d 965, 967 (6th Cir. 1974) (per curiam)

(addressing Rule 48(b) claim through "consideration of the guidelines adopted by the Supreme Court in *Barker v. Wingo*, 407 U.S. 514 [(1972)]").

And even if Rule 48(b) has not been completely superseded, it is worth noting that defendant cites no Rule 48(b) authority in support of her claim that her speedy trial rights have been violated.

## IV. CONCLUSION

For the reasons stated above, there was no violation of the statute of limitations. The Indictment in this case was returned before it expired, and assuming for the sake of argument that the Indictment was sealed, it was sealed for a proper purpose. Thus, the fact that it may have been sealed has no bearing on the question whether the statute of limitations was violated.

In addition, there was no violation of the Speedy Trial Clause under the test established in *Barker v. Wingo*, 407 U.S. 514 (1972), because the reason for the delay, the timeliness of defendant's assertion of her speedy trial right, and the prejudice to defendant caused by the delay are factors that all weigh heavily against defendant. Finally, Rule 48(b) was not violated because it provides no rights independent of those provided by the Speedy Trial Clause and the Speedy

Trial Act.

Defendant's motion to dismiss should be denied.

Respectfully submitted,

DAWN N. ISON
*United States Attorney*

 s/Stephen L. Hiyama
STEPHEN L. HIYAMA
*Assistant United States Attorney*
211 West Fort Street, Suite 2001
Detroit, Michigan 48226
phone 313-226-9674
e-mail stephen.hiyama@usdoj.gov
Date: February 23, 2022            bar no. P32236

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                  No. 17-CR-20687

-vs-

                                  Hon. Bernard A. Friedman

D-1    LOUELLA BREWSTER,

        Defendant.
_____/

## CERTIFICATE OF SERVICE

I hereby certify that on February 23, 2022, I electronically filed the *Government's Response to Defendant's Motion to Dismiss Indictment* and the brief in support thereof with the Clerk of the Court using the ECF system, which will send notification of such filing to the following ECF participant(s): Thomas Jakuc.

                                               s/Stephen L. Hiyama
                                               STEPHEN L. HIYAMA
Date:  February 23, 2022                *Assistant United States Attorney*